**ECFHELPDESK/CAND/09/US COURTS**

08/28/2008 09:59 AM

To   Rufino Santos/CAND/09/USCOURTS@USCOURTS

cc

bcc

Subject   Fw: Case ready for transfer

This case has been extracted form the Central District and is ready for opening.

**CV 08    4130**

Thank you,

~The ECF Help Desk for the Northern District of California
http://ecf.cand.uscourts.gov

**MEJ**

ECF TIP:
You should only scan documents which exist only in paper. All others should be converted to PDF directly from your computer.
For more info, please see our FAQ sections.

----- Forwarded by ECFHELPDESK/CAND/09/USCOURTS on 08/28/2008 09:58 AM -----

*E-filing*



**cacd_ecfmail@cacd.uscourts.gov**

08/27/2008 12:02 PM

To   ecfhelpdesk@cand.uscourts.gov

cc

Subject   Case ready for transfer

CASE: 2:08-cv-01897
    Title  : Vincent L. Davis v. Fidelity National Financial, Inc. et al
    NOS    : 410 (Anti-Trust)
    Cause  : 28:1331at (28:1331 Fed. Question: Anti-trust)
    Remarks: Transferred to Northern District of California.

REASON: Case is ready for transfer from UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA.

DETAILS: Copy and paste this URL into the Prepare Transferred Case program.

//ecf.cacd.circ9.dcn/cgi-bin/TransferDataFile.pl?file=./cand/cacd_208cv01897_tar.gz&checkSum=03853&fileSize=8083934



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
WESTERN DIVISION
312 North Spring Street, Room G-8
Los Angeles, CA 90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**SHERRI R. CARTER**
District Court Executive and
Clerk of Court

**To:** Clerk, United States District Court
Northern _____ District of California _____
450 Golden Gate Avenue, Box 36060
San Francisco, CA 94102-3434

**Re:** Transfer of our Civil Case No. CV 08-01897 DSF (AJWx) _____

Case Title: Vincent L. Davis v. Fidelity National Financial, Inc., et al., _____

Dear Sir/Madam:

**An order having been made transferring the above-numbered case to your district, we are transmitting herewith our file:**

☐  Original case file documents are enclosed in paper format.
☑  Electronic Documents are accessible through Pacer.
☐  Other: _____

Very truly yours,

Clerk, U.S. District Court

Date: August 27, 2008 _____

By M. Guerrero (213) 894-2833 _____
Deputy Clerk

*cc:    All counsel of record*

═══════════════════════════════════════════

**TO BE COMPLETED BY RECEIVING DISTRICT**

**Please acknowledge receipt via e-mail to appropriate address listed below and provide the case number assigned in your district:**

☑  CivilIntakecourtdocs-LA@cacd.uscourts.gov     (Los Angeles Office)
☐  CivilIntakecourtdocs-RS@cacd.uscourts.gov     (Riverside Office)
☐  CivilIntakecourtdocs-SA@cacd.uscourts.gov     (Santa Ana Office)

Case Number: _____

Clerk, U.S. District Court

Date: _____

By _____
Deputy Clerk

CV-22 (05/08)          **TRANSMITTAL LETTER - CIVIL CASE TRANSFER OUT**

(AJWx), CLOSED, DISCOVERY, MANADR, TRANSFERRED

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:08-cv-01897-DSF-AJW

Vincent L. Davis v. Fidelity National Financial, Inc. et al
Assigned to: Judge Dale S. Fischer
Referred to: Magistrate Judge Andrew J. Wistrich
Related Cases: 8:08-cv-00620-DSF-AJW
                8:08-cv-00440-DSF-AJW
                8:08-cv-00591-DSF-AJW
                8:08-cv-00620-DSF-AJW
Cause: 28:1331 Fed. Question: Anti-trust

Date Filed: 03/20/2008
Date Terminated: 08/26/2008
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

### Plaintiff

**Vincent L Davis**
*individually and on behalf of all others
similarly situated*

represented by **Alan R Plutzik**
Schiffrin Barroway Topaz and Kessler LLP
2125 Oak Grove Road Suite 120
Walnut Creek, CA 94598
925-945-0200
Email: aplutzik@bramsonplutzik.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Casandra A Murphy**
Schiffrin Barroway Topaz & Kessler
280 King of Prussia
Radnor, PA 19087
(610) 667-7706
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Kim**
Lim Ruger and Kim LLP
1055 West Seventh Street Suite 2800
Los Angeles, CA 90017
213-955-9500
Email:
christopher.kim@lrklawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edward W Ciolko**

Schiffrin Barroway Topaz and Kessler LLP
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
Email: eciolko@sbtklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph H Meltzer**
Schiffrin Barroway Topaz and Kessler LLP
280 King of Prussia Road
Radnor, PA 19807
610-667-7706
Email: jmeltzer@sbtklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Katherine B Bornstein**
Schiffrin Barroway Topaz and Kessler LLP
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
Email: kbornstein@sbtklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lisa J Yang**
Lim Ruger and Kim LLP
1055 West 7th Street Suite 2800
Los Angeles, CA 90017
213-955-9500
Email: lisa.yang@lrklawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Terence S Ziegler**
Sciffrin Barroway Topaz & Kessler
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Emilse Magana**                           represented by **R Alexander Saveri**
                                            Saveri and Saveri Inc
                                            111 Pine Street Suite 1700

San Francisco, CA 94111
415-217-6810
Email: rick@saveri.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Fidelity National Financial, Inc.**

**Defendant**

**Fidelity National Title Insurance Company**

**Defendant**

**Ticor Title Insurance Company**

**Defendant**

**Ticor Title Insurance Company of Florida**

**Defendant**

**Chicago Title Insurance Company**

**Defendant**

**National Title Insurance of New York Inc.**

**Defendant**

**Security Union Title Insurance Co**

**Defendant**

**The First American Corporation**

**Defendant**

**First American Title Insurance Company**          represented by **Frank Eugene Merideth, Jr**
Greenberg Traurig
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
310-586-7825
Email: meridethf@gtlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**United General Title Insurance Company**          represented by **Frank Eugene Merideth, Jr**
(See above for address)
*LEAD ATTORNEY*

ATTORNEY TO BE NOTICED

**Defendant**

**Landamerica Financial Group Inc**     represented by  **J Kevin Snyder**
Dykema Gossett
333 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
213-457-1800
Email: ksnyder@dykema.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Commonwealth Land Title Insurance
Company**

**Defendant**

**Lawyers Title Insurance Corporation**

**Defendant**

**Transnation Title Insurance
Company**

**Defendant**

**Stewart Title Guaranty Company**

**Defendant**

**Stewart Title Insurance Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/20/2008 | 1 | COMPLAINT against Defendants Fidelity National Financial, Inc., Fidelity National Title Insurance Company, Chicago Title Insurance Company, First American Title Insurance Company, Landamerica Financial Group Inc, Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation, Ticor Title Insurance Company, Ticor Title Insurance Company of Florida, National Title Insurance of New York Inc., Security Union Title Insurance Company, The First American Corporation, United General Title Insurance Company, Transnation Title Insurance Company, Stewart Title Guaranty Company, Stewart Title Insurance Company. (Filing fee $ 350 PAID) Jury Demanded, filed by plaintiff Vincent L Davis.(car) Modified on 3/24/2008 (car, ). Additional attachment(s) added on 4/23/2008 (cyo, ). (Entered: 03/24/2008) |
| 03/20/2008 | 2 | CERTIFICATE of Interested Parties filed by Plaintiff Vincent L Davis. (car) Additional attachment(s) added on 4/23/2008 (cyo, ). (Entered: 03/24/2008) |
| 03/20/2008 |  | 20 DAY Summons Issued re Complaint - (Discovery), Complaint - (Discovery), Complaint - (Discovery) 1 as to Defendants Fidelity National |

| | | |
|---|---|---|
| | | Financial, Inc., Fidelity National Title Insurance Company, Ticor Title Insurance Company, Ticor Title Insurance Company of Florida, Chicago Title Insurance Company, National Title Insurance of New York Inc., Security Union Title Insurance Co, The First American Corporation, First American Title Insurance Company, United General Title Insurance Company, Landamerica Financial Group Inc, Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation, Transnation Title Insurance Company, Stewart Title Guaranty Company, Stewart Title Insurance Company. (car) (Entered: 03/24/2008) |
| 03/20/2008 | 3 | NOTICE TO PARTIES OF ADR PILOT PROGRAM filed.(car) (Entered: 03/24/2008) |
| 03/20/2008 | 4 | NOTICE OF FILING FEE DUE on Pro Hac Vice Application mailed to attorney Joseph H Meltzer for Plaintiff Vincent L Davis. (Attachments: # 1 G-64 application) (car) (Entered: 03/24/2008) |
| 03/20/2008 | 5 | NOTICE OF FILING FEE DUE on Pro Hac Vice Application mailed to attorney Edward W Ciolko for Plaintiff Vincent L Davis. (Attachments: # 1 G-64 application) (car) (Entered: 03/24/2008) |
| 03/20/2008 | 6 | NOTICE OF FILING FEE DUE on Pro Hac Vice Application mailed to attorney Katherine B Bornstein for Plaintiff Vincent L Davis. (Attachments: # 1 G-64 application) (car) (Entered: 03/24/2008) |
| 03/20/2008 | 7 | NOTICE OF FILING FEE DUE on Pro Hac Vice Application mailed to attorney Terence S Ziegler for Plaintiff Vincent L Davis. (Attachments: # 1 G-64 Application) (car) (Entered: 03/24/2008) |
| 03/20/2008 | 8 | NOTICE OF FILING FEE DUE on Pro Hac Vice Application mailed to attorney Casandra A Murphy for Plaintiff Vincent L Davis. (Attachments: # 1 G-64 application) (car) (Entered: 03/24/2008) |
| 03/24/2008 | 9 | STANDING ORDER FOR CASES ASSIGNED TO JUDGE DALE S. FISCHER by Judge Dale S. Fischer, (yl) (Entered: 03/25/2008) |
| 04/01/2008 | 10 | PROOF OF SERVICE Executed by Plaintiff Vincent L Davis, upon First American Title Insurance Company served on 3/27/2008, answer due 4/16/2008. Original Summons No. (Kim, Christopher) (Entered: 04/01/2008) |
| 04/01/2008 | 11 | PROOF OF SERVICE Executed by Plaintiff Vincent L Davis, upon The First American Corporation served on 3/27/2008, answer due 4/16/2008. Original Summons No. (Kim, Christopher) (Entered: 04/01/2008) |
| 04/02/2008 | 12 | PROOF OF SERVICE Executed by Plaintiff Vincent L Davis, upon United General Title Insurance Company served on 3/27/2008, answer due 4/16/2008. Original Summons No. (Kim, Christopher) (Entered: 04/02/2008) |
| 04/09/2008 | 13 | STIPULATION for Extension of Time to File as to Complaint - (Discovery), Complaint - (Discovery), Complaint - (Discovery) 1 filed by Defendants First American Title Insurance Company, United General Title Insurance Company. (Merideth, Frank) (Entered: 04/09/2008) |
| 04/11/2008 | 14 | ORDER by Judge Dale S. Fischer Re Time to Respond to Complaint. Pursuant |

| | | to the Stipulation 13 , It Is So Ordered. (mg) (Entered: 04/11/2008) |
|---|---|---|
| 04/15/2008 | 15 | FIRST STIPULATION Extending Time to Answer the complaint as to filed by defendant Landamerica Financial Group Inc. (Attachments: # 1 Proposed Order)(Snyder, J) (Entered: 04/15/2008) |
| 04/16/2008 | 16 | CERTIFICATE OF SERVICE filed by defendant Landamerica Financial Group Inc, re First Stipulation Extending Time to Answer (30 days or less) 15 served on April 16, 2008. (Snyder, J) (Entered: 04/16/2008) |
| 04/16/2008 | 17 | ORDER by Judge Dale S. Fischer GRANTING Stipulation re Time to Respond to Complaint 15 . IT IS HEREBY ORDERED that, Defendants Land America Financial Group, Inc., Commonwealth Land Title Insurance Company, Lawyers Title Insurance Corporation, and Transnation Title Insurance Company shall have up to and including May 27, 2008 to move against, answer or otherwise respond to the Complaint on file herein. (sch) (Entered: 04/17/2008) |
| 05/27/2008 | 18 | STIPULATION for Extension of Time to File Answer to July 14, 2008 re Complaint - (Discovery), Complaint - (Discovery), Complaint - (Discovery), Complaint - (Discovery) 1 filed by Defendant First American Title Insurance Company, United General Title Insurance Company. (Attachments: # 1 Proposed Order For Extension of Time to Answer)(Merideth, Frank) (Entered: 05/27/2008) |
| 05/28/2008 | 19 | ORDER FURTHER EXTENDING TIME TO RESPOND TO COMPLAINT granting Stipulation to Extend Time to Answer (More than 30 days) 18 by Judge Dale S. Fischer. (bm) (Entered: 05/28/2008) |
| 06/19/2008 | 20 | APPLICATION OF NON-RESIDENT ATTORNEY Joseph H. Meltzer for Leave to Appear Pro Hac Vice. FEE NOT PAID. filed by Plaintiff Vincent L Davis. (Attachments: # 1 Proposed Order)(Yang, Lisa) (Entered: 06/19/2008) |
| 06/19/2008 | 21 | APPLICATION OF NON-RESIDENT ATTORNEY Terence S. Ziegler for Leave to Appear Pro Hac Vice. FEE NOT PAID. filed by Plaintiff Vincent L Davis. (Attachments: # 1 Proposed Order)(Yang, Lisa) (Entered: 06/19/2008) |
| 06/19/2008 | 22 | APPLICATION OF NON-RESIDENT ATTORNEY Edward W. Ciolko for Leave to Appear Pro Hac Vice. FEE NOT PAID. filed by Plaintiff Vincent L Davis. (Attachments: # 1 Proposed Order)(Yang, Lisa) (Entered: 06/19/2008) |
| 06/19/2008 | 23 | APPLICATION OF NON-RESIDENT ATTORNEY Casandra A. Murphy for Leave to Appear Pro Hac Vice. FEE NOT PAID. filed by Plaintiff Vincent L Davis. (Attachments: # 1 Proposed Order)(Yang, Lisa) (Entered: 06/19/2008) |
| 06/24/2008 | 24 | ORDER by Judge Dale S. Fischer Granting APPLICATION OF NON-RESIDENT ATTORNEY Joseph H. Meltzer for Leave to Appear Pro Hac Vice. FEE PAID. 20 on behalf of Plaintiff Vincent L Davis. Lisa J. Yang is designated as local counsel. (sch) (Entered: 06/24/2008) |
| 06/24/2008 | 25 | ORDER by Judge Dale S. Fischer Granting APPLICATION OF NON-RESIDENT ATTORNEY Edward W. Ciolko for Leave to Appear Pro Hac Vice. FEE PAID 22 on behalf of Plaintiff Vincent L Davis. Lisa J. Yang is designated as local counsel. (sch) (Entered: 06/24/2008) |

See below

| 06/24/2008 | 26 | ORDER by Judge Dale S. Fischer Granting APPLICATION OF NON-RESIDENT ATTORNEY Casandra A. Murphy for Leave to Appear Pro Hac Vice. FEE PAID 23 on behalf of Plaintiff Vincent L Davis. Lisa J. Yang is designated as local counsel. (sch) (Entered: 06/24/2008) |
|---|---|---|
| 06/24/2008 | 27 | ORDER by Judge Dale S. Fischer Granting APPLICATION OF NON-RESIDENT ATTORNEY Terence S. Ziegler for Leave to Appear Pro Hac Vice. FEE NOT PAID. 21 by Terence S. Ziegler to appear on behalf of Plaintiff Vincent L Davis.Lisa J. Yang is designated as local counsel. Fee PAID. (yl) (Entered: 06/24/2008) |
| 07/30/2008 | 28 | NOTICE OF MOTION AND MOTION to Change Venue to Northern District of California filed by Plaintiff Emilse Magana. Motion set for hearing on 9/8/2008 at 01:30 PM before Judge Dale S. Fischer. (Attachments: # 1 Declaration of William Heye in Support of Unopposed Motion to Transfer Venue, # 2 Proposed Order Re Unopposed Motion to Transfer Venue)(Saveri, R) (Entered: 07/30/2008) |
| 08/07/2008 | 29 | MINUTES OF (IN CHAMBERS) ORDER Re MOTION To Transfer Venue 28 by Judge Dale S. Fischer. The Court will not consider the motion until Plaintiff has filed proofs of service on all parties to this and the above-referenced actions. (See Order for Further Details). (sch) (Entered: 08/07/2008) |
| 08/11/2008 | 30 | DECLARATION of Cadio Zirpoli In Support of MOTION to Change Venue to Northern District of California 28 filed by Plaintiff Emilse Magana. (Saveri, R) (Entered: 08/11/2008) |
| 08/11/2008 | 31 | OF SERVICE filed by Plaintiff Emilse Magana, re MOTION to Change Venue to Northern District of California 28 , Declaration (Motion related) 30 *Proof of Service* served on 08/11/08. (Saveri, R) (Entered: 08/11/2008) |
| 08/26/2008 | 32 | MINUTES (IN CHAMBERS) by Judge Dale S. Fischer: Proceedings: Order GRANTING MOTION to Change Venue to Northern District of California 28 . The Court has reviewed the unopposed motion to transfer venue, is satisfied that all parties have been served, and has received no opposition to the motion. Pursuant to 28 U.S.C. § 1404(a), the above captioned actions are transferred to the United States District Court for the Northern District of California. (MD JS-6. Case Terminated.) (Attachments: # 1 CV-22) (mg) (Entered: 08/27/2008) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/29/2008 08:58:48 | | | |
| **PACER Login:** | us4077 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:08-cv-01897-DSF-AJW End date: 8/29/2008 |
| **Billable Pages:** | 5 | **Cost:** | 0.40 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No.     CV 08-1897 DSF (AJWx)     **JS - 6**          Date     8/26/08
             CV 08-0440 DSF (AJWx)
             CV 08-0591 DSF (AJWx)
             CV 08-0620 DSF (AJWx)

Title     Davis v. Fidelity National Financial, Inc. et al.
          Kothari v. First American Title Ins. Co. et al.
          Magana v. Fidelity National Financial, Inc. et al.
          Moynahan v. Fidelity National Financial, Inc. et al.

Present: The          DALE S. FISCHER, United States District Judge
Honorable

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**          (In Chambers) Order GRANTING Motion To Transfer Venue


        The Court has reviewed the unopposed motion to transfer venue, is satisfied that all
parties have been served, and has received no opposition to the motion. Pursuant to 28
U.S.C. § 1404(a), the above captioned actions are transferred to the United States District
Court for the Northern District of California.


        IT IS SO ORDERED.

FILED

2008 MAR 20   PM 4: 11

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1　Christopher Kim (SBN 082080)
2　Lisa J. Yang (SBN 208971)
　 **LIM RUGER & KIM, LLP**
3　1055 West Seventh Street, Suite 2800
　 Los Angeles, California 90017
4　Telephone: (213) 955-9500
5　email: christopher.kim@lrklawyers.com
　　　　　lisa.yang@lrklawyers.com
6

7　Joseph H. Meltzer
8　Edward W. Ciolko
　 Katherine B. Bornstein (SBN 249926)
9　Terence S. Ziegler
　 Casandra A. Murphy
10 **SCHIFFRIN BARROWAY**
11 **　TOPAZ & KESSLER, LLP**
　 280 King of Prussia Road
12 Radnor, Pennsylvania 19087
13 Telephone: (610) 667-7706
14
15 Counsel for Plaintiffs,

Alan R. Plutzik (SBN. 077785)
Robert M. Bramson (SBN 102006)
**SCHIFFRIN BARROWAY TOPAZ
& KESSLER, LLP**
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0770

16
17　　　　　**UNITED STATES DISTRICT COURT**
18　　　　　**CENTRAL DISTRICT OF CALIFORNIA**
19　　　　　　　　**WESTERN DIVISION**

20　VINCENT LEON DAVIS, individually
　 and on behalf of all others similarly
21 situated,
22　　　　　　　　　Plaintiff,
23
24　　　v.
25　FIDELITY NATIONAL FINANCIAL,
　 INC., FIDELITY NATIONAL TITLE
26 INSURANCE COMPANY, TICOR
　 TITLE INSURANCE COMPANY,
27 TICOR TITLE INSURANCE
　 COMPANY OF FLORIDA, CHICAGO
28 TITLE INSURANCE COMPANY,

Case No. **CV08 - 01897** DSF
　　　　　　　　　　　　　　　AJW

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

LIM, RUGER & KIM, LLP

NATIONAL TITLE INSURANCE OF NEW YORK, INC., SECURITY UNION TITLE INSURANCE COMPANY, THE FIRST AMERICAN CORPORATION, FIRST AMERICANTITLE INSURANCE COMPANY, UNITED GENERALTITLE INSURANCE COMPANY, LANDAMERICA FINANCIAL GROUP, INC., COMMONWEALTH LAND TITLE INSURANCE COMPANY, LAWYERS TITLE INSURANCE CORPORATION, TRANSNATION TITLE INSURANCE COMPANY, STEWART TITLE GUARANTY COMPANY and STEWART TITLE INSURANCE COMPANY

Defendants.

Plaintiff, ("Plaintiff") by his attorneys, on behalf of himself and all others similarly situated, hereby seek treble damages, other monetary relief and injunctive relief for defendants' violations of United States and California antitrust laws alleging as follows:

## I.    INTRODUCTION

1.    The purpose of title insurance is to protect the buyer against previously undiscovered title defects which may encumber the use, enjoyment or transfer of the property.  Title insurers do not guarantee a clean title but rather safeguard the policyholder against title defects found after the property has been transferred.  Therefore, the only protection afforded to the insured concerns the highly unlikely event that an undetected title deficiency existed prior to the time the policy was issued.

2.    Consumers often find themselves in unfamiliar territory when it comes to title insurance.  The majority of homebuyers are overwhelmed by the

LIM, RUGER & KIM, LLP

tremendous amount of paperwork that is flashed before their eyes during the closing process of a home purchase. They generally walk away from the closing without any understanding of their title insurance policy. There is a marked contrast between title insurance and traditional life, automotive and homeowner insurance policies that are marketed to consumers.

3. Title companies do not engage in direct to consumer marketing. Instead, the title insurance industry operates on what is termed a "reverse competition" model. Reverse competition means that title insurers solicit business referrals from the other major players in the home purchase scenario – real estate agents and agencies, banks, lenders, builders, developers and other middlemen or go-betweens who are in the best position to influence buyers. Indeed, buyers typically defer, often unknowingly, to their lender, builder, real estate agent or representative to select a title company. These middlemen act on behalf of the title insurance companies in return for receiving kickbacks and other financial incentives. Insurance consumers, in most cases, are effectively removed from the decision-making process and assigned a policy. The title insurance industry operates on an inherently corrupt system that eliminates competition based on the services and policies rendered. In fact, their rates and policy structures are primarily dictated through publications created by their national trade association, the American Land Title Association.

4. Reverse competition, as the term suggests, isn't a model that benefits consumers through market-driven forces. In fact, consumers are bypassed completely as title companies spend nearly all of their marketing budgets "wining and dining" real estate agents, lenders, builders, developers and others in an effort to convince these middlemen to steer their home-buying clients to their companies for their title insurance needs.

5. The California title insurance market is dominated by four groups of

1  affiliated companies which control over 90 percent of the policies sold in the state.

2  In addition, these powerful groups own and control a majority of California title

3  plants that virtually every title insurer uses to issue title policies.

4       6.    Title insurers have industry meetings where they set rates that are

5  ultimately filed and frequently rubberstamped by the applicable state insurance

6  agency.  The title insurance companies, in their respective markets, collectively

7  come to an agreement on a set price that in no manner accounts for their miniscule

8  risk exposure or the nature of the property being insured.  They are able to

9  essentially regulate themselves and eliminate any competition in the consumer

10  market.  As a result of the joint agreement as to rates, the courting of middlemen

11  through financial rewards is the only aspect of title insurance business that is

12  competitive.

13       7.    Having agreed to fix prices in states where joint rate setting occurs, the

14  companies agreed to not compete based on price to the consumer in other states,

15  including California., where regulation of filed rates is lax or non-existent.  Thus,

16  they agreed to set rates at supracompetitive prices and to compete based on

17  offering inducements to middlemen. In California, in three successive reports, the

18  Office of the Insurance Commissioner ("OIC") has found an "astonishing number"

19  of such inducements that are in violation of state law.  However, the OIC does not

20  actively oversee or regulate rates, and, in fact, does not by its own admission have

21  the power to do so. The absence of regulation has allowed collusive behavior and

22  excessive rates.

23       8.    In addition to paying inducements and kickbacks, the title companies

24  and their agents divide the market of real-estate middlemen through the use of

25  Affiliated Business Arrangements ("ABAs"), wherein the dominant real estate

26  brokers purchase significant ownership stakes in favored title insurance affiliates.

27  The real estate brokers then reward their associates for using the preferred title

28

LIM, RUGER & KIM, LLP

1  insurance providers and lock out independent title insurers.

2      9.    In this action, plaintiff, on behalf of a Class of those purchasing title

3  insurance in California, seek damages arising from defendants' violations of the

4  Sherman Act as well as California statutory law.

5  ## II.    JURISDICTION AND VENUE

6      10.    Plaintiff and class members bring this action to recover monetary

7  damages, including treble damages, and to obtain injunctive relief, costs of suit,

8  and reasonable attorneys' fees arising from the defendants' violations of Section 1

9  of the Sherman Act (15 U.S.C. § 1).

10      11.    This Court has jurisdiction over this action pursuant 28 U.S.C. §§

11  1331, 1337(a) and 1367.

12      12.    Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15

13  and 22, and 28 U.S.C. § 1391 (b) and (c), in that defendants maintain offices,

14  conduct business or are found within this judicial district.

15  ## III.    PARTIES

16  **A.**    **Plaintiff**

17      13.    Plaintiff, Vincent Leon Davis, is an individual residing in Los Angeles

18  County, California. During the class period, plaintiff purchased title insurance

19  directly from one or more defendants herein and was injured by the unlawful

20  conduct alleged in this complaint.

21  **B.**    **Defendants**

22      14.    Defendant Fidelity National Financial, Inc. ("Fidelity National") is a

23  Delaware corporation headquartered at 601 Riverside Avenue, Jacksonville,

24  Florida 32204. Fidelity National does business in California through one or more

25  of its subsidiaries, including but not limited to, defendants Fidelity National Title

26  Insurance Company, Ticor Title Insurance Company, Ticor Title Insurance

27  Company of Florida, National Title Insurance of New York, Inc., Security Union

28

LIM, RUGER & KIM, LLP

1  Title Insurance Company, and Chicago Title Insurance Company. Fidelity

2  National is registered to do business in California.

3       15.    Defendant Fidelity National Title Insurance Company ("FNTIC") is a

4  California Corporation with its principal place of business at 601 Riverside Ave.,

5  Jacksonville, Florida 32204. FNTIC does business in California, is a licensed title

6  insurance company in California and is registered to do business in California.

7       16.    Defendant Ticor Title Insurance Company ("Ticor") is a California

8  Corporation with its principal place of business at 601 Riverside Ave.,

9  Jacksonville, Florida 32204. Ticor does business in California, is a licensed title

10  insurance company in California and is registered to do business in California.

11       17.    Defendant Ticor Title Insurance Company of Florida ("TTICF") is a

12  Florida corporation with its principal place of business at 601 Riverside Ave.,

13  Jacksonville, Florida 32204. TTICF does business in California, is a licensed title

14  insurance company in California and is registered to do business in California.

15       18.    Defendant Chicago Title Insurance Company ("Chicago Title") is a

16  Missouri Corporation with its principal place of business at 601 Riverside Ave.,

17  Jacksonville, Florida 32204. Chicago Title does business in California, is a

18  licensed title insurance company in California and is registered to do business in

19  California.

20       19.    Defendant National Title Insurance of New York, Inc. ("NTINY") is a

21  New York corporation with its principal place of business at 601 Riverside Ave.,

22  Jacksonville, Florida 32204. NTINY does business in California, is a licensed title

23  insurance company in California and is registered to do business in California.

24       20.    Defendant Security Union Title Insurance Company ("SUTIC") is a

25  California corporation with its principal place of business at 601 Riverside Ave.,

26  Jacksonville, Florida 32204. SUTIC does business in California, is a licensed title

27  insurance company in California and is registered to do business in California.

28

LIM, RUGER & KIM, LLP

21.     The Fidelity family of title insurance companies (collectively, "Fidelity") – which includes defendants Fidelity National, FNTIC, Ticor, TTICF, Chicago Title, NTINY and SUTIC, and their affiliates – is engaged in selling title insurance to purchasers of commercial and residential real estate throughout the United States, including California. Nationally, Fidelity accounts for approximately 27 percent of title premiums, which in 2006 amounted to roughly $4.6 billion. Fidelity, Chicago Title and Ticor were founding members of TIRSA (defined below) and since TIRSA's inception have charged title insurance rates in New York that TIRSA collectively sets.

22.     The Fidelity family of title insurance companies and their affiliates are wholly-owned and controlled by defendant Fidelity National Financial, Inc. Through its subsidiaries, Fidelity National is a provider of title insurance, specialty insurance, and claims management services. Fidelity National had 2006 revenues of roughly $9.4 billion. The Fidelity family of title insurance companies engaged in the conduct challenged herein with the approval and assent of defendant Fidelity National.

23.     Defendant The First American Corporation ("First American") is a California corporation with its headquarters at 1ST American Way, Santa Ana, California 92707. First American does business in California through one or more of its subsidiaries, including but not limited to, defendants First American Title Insurance Company and United General Title Insurance Company.

24.     Defendant First American Title Insurance Company ("FATIC") is a California corporation with its headquarters at 1st American Way, Santa Ana, California 92707. FATIC does business in California, is a licensed title insurance company in California and is registered to do business in California.

25.     Defendant United General Title Insurance Company ("UGTIC") is a Colorado corporation located at 8310 S. Valley Highway, Suite 130, Englewood,

LIM, RUGER & KIM, LLP

CLASS ACTION COMPLAINT

1  CO 80112. UGTIC does business in California, is a licensed title insurance

2  company in California and is registered to do business in California.

3      26.    The First American family of title insurance companies (collectively,

4  "First American") – which includes defendants First American, FATIC and

5  UGTIC, and their affiliates – is engaged in selling title insurance to purchasers of

6  commercial and residential real estate throughout the United States, including

7  California. Nationally, First American accounts for approximately 29 percent of

8  title premiums, which in 2006 amounted to roughly $4.8 billion. First American

9  Title was a founding member of TIRSA and since TIRSA's inception has charged

10 title insurance rates in New York that TIRSA collectively sets.

11     27.    The First American family of title insurance companies and their

12 affiliates are wholly-owned and controlled by defendant The First American

13 Corporation.  Through its subsidiaries, First American is a provider of title

14 insurance, business information, and related products and services. First American

15 had 2006 revenues of roughly $8.5 billion.  The First American family of title

16 insurance companies and their affiliates engaged in the conduct challenged herein

17 with the approval and assent of defendant First American.

18     28.    Defendant LandAmerica Financial Group, Inc. ("LandAmerica") is a

19 Virginia corporation headquartered at 5600 Cox Road, Glen Allen, Virginia 23060.

20 Land America does business in California through one or more of its subsidiaries,

21 including but not limited to, defendants Commonwealth Land Title Insurance

22 Company, Lawyers Title Insurance Corporation and Transnation Title Insurance

23 Company.

24     29.    Defendant Commonwealth Land Title Insurance Company ("CLTIC")

25 is a Pennsylvania corporation with is principal place of business at 5600 Cox Road,

26 Glen Allen, Virginia 23060.  CLTIC does business in California, is a licensed title

27 insurance company in California and is registered to do business in California.

28

CLASS ACTION COMPLAINT

LIM, RÜGER & KIM, LLP

1    30.    Defendant Lawyers Title Insurance Corporation ("LTIC") is a

2    Nebraska corporation with is principal place of business at 5600 Cox Road, Glen

3    Allen, Virginia 23060. LTIC does business in California, is a licensed title

4    insurance company in California and is registered to do business in California.

5    31.    Defendant Transnation Title Insurance Company ("TNTIC") is a

6    Nebraska corporation with is principal place of business at 5600 Cox Road, Glen

7    Allen, Virginia 23060. TNTIC does business in California, is a licensed title

8    insurance company in California and is registered to do business in California.

9    32.    The LandAmerica family of title insurance companies (collectively,

10   "LandAmerica") – which includes defendants LandAmerica, CLTIC, LTIC and

11   TNTIC, and their affiliates – is engaged in selling title insurance to purchasers of

12   commercial and residential real estate throughout the United States, including

13   California. Nationally, LandAmerica accounts for approximately 19 percent of title

14   premiums, which in 2006 amounted to roughly $3.15 billion. Commonwealth and

15   Lawyers Title were founding members of TIRSA and since TIRSA's inception

16   have charged title insurance rates in New York that TIRSA collectively sets.

17   33.    The LandAmerica family of title insurance companies and their

18   affiliates are wholly-owed and controlled by defendant Land America Financial

19   Group, Inc.  Through its subsidiaries, LandAmerica is a provider of title insurance

20   and other products and services that facilitate the purchase, sale, transfer, and

21   financing of residential and commercial real estate.  LandAmerica had 2006

22   revenues of roughly $4 billion.  The LandAmerica family of title insurance

23   companies and their affiliates engaged in the conduct challenged herein with the

24   approval of defendant LandAmerica.

25   34.    Defendant Stewart Title Guaranty Company ("STGC") is a Texas

26   corporation headquartered at 1980 Post Oak Blvd., Suite 800, Houston, Texas

27   77056. STGC does business in California, is a licensed title insurance company in

28

LIM, RUGER & KIM, LLP

9

CLASS ACTION COMPLAINT

1  California and is registered to do business in California.

2     35.    Defendant Stewart Title Insurance Company ("STIC") is a New York

3  corporation with its principal place of business at 300 E. 42nd St., Floor 10, New

4  York, NY 10017. STIC does business in California, is a licensed title insurance

5  company in California and is registered to do business in California.

6     36.    The Stewart family of title insurance companies (collectively,

7  "Stewart") – which includes defendants STGC and STIC, and its affiliates – is

8  engaged in selling title insurance to purchasers of commercial and residential real

9  estate throughout the United States and California. Nationally, Stewart accounts

10 for approximately 12 percent of title premiums, which in 2006 amounted to

11 roughly $2 billion. Stewart was a founding member of TIRSA and since TIRSA's

12 inception has charged title insurance rates in New York that TIRSA collectively

13 sets.

14     37.    Together, defendants account for more than 85 percent of the title

15 premiums consumers pay in California. Nationally, they account for more than 85

16 percent of title premiums, which in 2006 amounted to roughly $14.5 billion.

17 Throughout the relevant damages period, defendants charged California consumers

18 in California virtually identical title insurance rates.

19                        **IV.   OTHER ENTITIES**

20     38.    TIRSA is a voluntary association of title insurers licensed as a rate

21 service organization pursuant to Article 23 of the State of New York Insurance

22 Law. TIRSA maintains its offices in New York City, which until recently were

23 located at the same New York address of Fidelity Title.

24     39.    TIRSA annually compiles from its members statistical data relating to

25 their title insurance premiums, losses and expenses and submits this information in

26 aggregate form to the New York Insurance Department. TIRSA also prepares and

27 submits the New York Title Insurance Rate Manual which sets forth title rates to

28

LIM, RUGER & KIM, LLP

1   be charged and rules to be followed by TIRSA's members.  The Insurance

2   Department has never objected to any of the rates TIRSA has collectively set.

3   Similarly, the California OIC has not actually held a public hearing or conducted

4   any other review or regulation of the title insurance rates in California for thirty

5   years.

6       40.     TIRSA's membership is comprised of defendant insurers and all other

7   title insurers that are licensed to issue policies in New York.  Currently, Fidelity,

8   First American, LandAmerica, and Stewart collectively represent 14 of TIRSA's 22

9   members.  As such, they comprise a majority voting block which, according to

10  TIRSA's by-laws, allows them to control the operations of TIRSA and, in

11  particular, TIRSA's collective rate setting activity.

12      41.     Various other persons, firms and corporations not made defendants

13  herein have participated as co-conspirators with the defendants in the violations

14  alleged herein and have performed acts and made statements in furtherance

15  thereof.

16          **V.     CLASS ACTION ALLEGATIONS**

17      42.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of

18  Civil Procedure, particularly Rule 23(b)(3), on behalf of himself and the following

19  class (the "Class"):

20              All persons who purchased title insurance directly from

21              one or more of the defendants and/or their co-

22              conspirators for residential and commercial property in

23              California during the four year period preceding this

24              lawsuit.  Excluded from the Class are defendants, their

25              parent companies, subsidiaries and affiliates, government

26              entities and judges or justices assigned to hear any aspect

27              of this case.

28

LIM, RUGER & KIM, LLP

1    43.    Plaintiff does not currently know the exact number and identities of

2    class members but such information is known by defendants and is ascertainable

3    through appropriate discovery. Plaintiff believes that the number of potential class

4    members is so numerous that joinder is impracticable.

5    44.    Plaintiff's claims are typical of the Class because all members of the

6    Class are direct purchasers of title insurance, injured in the same manner by the

7    same wrongful conduct of defendants, and seek relief that is common to the Class.

8    The questions of law and fact common to the Class members predominate over any

9    questions which may affect only individual members.

10    45.    Plaintiff will fairly and adequately represent the interests of the Class

11    in that plaintiff is a direct purchaser of title insurance during the relevant damage

12    period and has no conflict with any other members of the Class. Furthermore,

13    plaintiff has retained competent counsel experienced in antitrust class action

14    litigation.

15    46.    Plaintiff, along with other members of the Rule 23(b)(3) Class, was

16    injured as a result of paying supracompetitive prices for title insurance in

17    California. These supracompetitive prices were achieved as a result of defendants'

18    illegal price-fixing activities and market allocation and division.

19    47.    Members of the (b)(3) Class include hundreds of thousands, if not

20    millions, of consumers. They are so numerous that their joinder would be

21    impracticable.

22    48.    Plaintiff also brings this action as a class action under Rule 23(b)(2) of

23    the Federal Rule of Civil Procedure, which includes all members of the 23(b)(3)

24    Class, and all consumers who are threatened with injury by the anticompetitive

25    conduct detailed herein.

26    49.    Defendants have acted, continued to act, refused to act and continued

27    to refuse to act on grounds generally applicable to the Rule 23(b)(2) Class, thereby

28

LIM, RUGER & KIM, LLP

1  making appropriate final injunctive relief with respect to the Rule 23(b)(2) Class as
2  a whole.

3      50.    Members of the Rule 23(b)(2) Class include hundreds of thousands, if
4  not millions, of consumers. They are so numerous that their joinder would be
5  impracticable.

6      51.    Among the questions of law and fact common to the Class are:

7          (a) Whether defendants have engaged in the alleged illegal price-
8              fixing activity and market allocation and division;

9          (b) The duration and scope of defendants' alleged illegal price-
10             fixing and market allocation and division activity;

11         (c) Whether defendants' alleged illegal price-fixing and market
12             allocation and division has caused higher prices to plaintiff and
13             other purchasers of title insurance in California; and

14         (d) Whether plaintiff and the other class members are entitled to,
15             among other things, injunctive relief, and if so, the nature and
16             extent of such injunctive relief.

17     52.    A class action is superior to other available methods for the fair and
18  efficient adjudication of this controversy. The prosecution of duplicative litigation
19  by individual Class members would create an unnecessary risk of inconsistent or
20  varying adjudications potentially leading to the establishment of incompatible
21  standards of conduct for defendants. The Class is readily definable and the
22  prosecution as a class action provides the only adequate means of redress for
23  otherwise diminutive claims that could not reasonably support the expense of an
24  individual litigation.

25              **VI.    TRADE AND COMMERCE**

26     53.    During the Class period, each defendant and their co-conspirators sold
27  title insurance in California and in a continuous and uninterrupted flow of

28

LIM, RUGER & KIM, LLP

13
CLASS ACTION COMPLAINT

1  interstate commerce

2      54.    During the Class period, defendants collectively dominated the title

3  insurance market. Title insurance consumers in the United States paid an

4  estimated $17 billion for residential title insurance in 2005.

5      55.    During the Class period, defendants dominated over 85% of the title

6  insurance market in California and the United States.

7      56.    During the Class period, Class members outside of California

8  purchased residential or commercial title insurance within the State of California.

9      57.    The business activities of the defendants and their co-conspirators

10  were within the flow of interstate commerce and substantially affected interstate

11  commerce in the United States.

## VII.  FACTUAL ALLEGATIONS

**A.**    **The Nature of Title Insurance**

14      58.    In California, title insurance rates are based on a percentage of the

15  total value of the property being insured. For example, a California residential

16  property that was sold for $500,000 would have cost the buyer approximately

17  $1,500 for title insurance in 2005.

18      59.    Consumers are required to purchase title insurance when they take

19  possession of property. Mortgage loans will not be approved without the security

20  of a title insurance policy. Title companies perform extensive research to identify

21  any defects that may encumber a property before it is transferred to an owner.

22  Title insurance is a necessary commodity that protects an owner from defects that

23  existed, but were not identified by the title company, prior to their settlement.

24      60.    Title insurance companies operate their business on the premise that

25  consumers are generally uninformed or unaware of all matters concerning title

26  insurance. Buyers are generally not presented, at any time, with an opportunity to

27  make an independent decision regarding any aspect of their property title. In most

28

LIM, RUGER & KIM, LLP

1   cases, the buyer is not aware that they have a choice when it comes to selecting a

2   title company. Even a sophisticated buyer, however, is powerless at the bargaining

3   table because title companies have eliminated competition from the market. The

4   unregulated, fixed rate charged for title insurance is not, by any reasonable

5   evaluation, commensurate with the associated risks assumed and the services

6   rendered.

7       61.    The title insurer bears a statistically minimal risk for undetected title

8   defects that existed prior to the transfer of property. A competent review of the

9   previous ownership history should reveal any encumbrances, liens, exclusions, or

10  other defects in the title which are excluded from the insured's policy. The

11  information necessary to identify title deficiencies is readily available and highly

12  dependable. The extent of the search itself is dependant on a number of factors

13  including the earliest recorded age of the property, the number of transfers, and the

14  integrity and accessibility of ownership records. The complexity of the title

15  company's research and review process is unrelated to the value of the property or

16  rate charged to the insured. Indeed, the national average recovery for a claim on a

17  title insurance policy is approximately 5% of the total premium. On the other

18  hand, the national average for property insurance is approximately 80% of the total

19  premium collected.

20      62.    The most effective, but illegal, way for a particular title insurer to get

21  business is to encourage those making the purchasing decisions – the real-estate

22  middlemen – to steer business to that insurer. The best way to so motivate the

23  middlemen is not through lower prices (that they are not even paying). Rather, it is

24  through kickbacks in the form of finder's fees, gifts, meals, business services and

25  other financial enticements. Therefore, it is through higher pricing (which allows

26  for generous inducements and kickbacks), not lower pricing that provides the best

27  way for title insurers to compete and increase their business.

28

LIM, RUGER & KIM, LLP

15

CLASS ACTION COMPLAINT

63.     New York is one of several states in which the leading title insurers collectively fix their prices through a rate-setting organization like TIRSA. There are two principal cost components that go into TIRSA's calculation. One comprises the risk associated with issuing the title policy. The other comprises the "agency commissions" paid to title agents.

64.     The risk component covers the risk the title insurer bears for any undiscovered defects in the title. Unlike property insurance, title insurance carries with it a very limited risk of loss to the insurer. That is because title insurance protects against unknown prior events that cause defects in title. With a proper search and examination of prior ownership records, any such defects can and almost always are readily identified and excluded from the policy's coverage. Consequently, the average claim payout on a title insurance policy in the United States amounts to only about 5 percent of the total premium collected. This is very different from property coverage (such as auto and home insurance) — which protects against future occurrences over which the insurer has little to no control — where the average claim payout amounts to about 80 percent of the total premium.

65.     The "agency commissions" component of the title insurance rate covers payments made to title agents. Defendants have an ownership or management stake in many of the title agencies to which these payments are made. A small portion of these payments is for the search and exam of prior ownership records of the property being purchased to identify any liens, encumbrances, burdens, exclusions, or other defects in the title. The search and exam function does not involve the spreading or underwriting of risk, and title insurers typically outsource this task to title agents.

66.     The remainder, and by far the bulk, of the agency commissions are comprised of costs unrelated to the issuance of title insurance. These costs include kickbacks and other financial inducements title insurers provide to title agents and

LIM, RUGER & KIM, LLP

1  indirectly (through title agents) to the lawyers, brokers, and lenders who, in reality,

2  are the ones deciding which title insurer to use. These payments have nothing to do

3  with the issuance of title insurance and are made by title insurers merely to inflate

4  their revenues and steer business their way.

5      67.   Under TIRSA's collective rate setting regime, roughly 85 percent of

6  the total title insurance premium is based on the so-called "costs" associated with

7  the payment of agency commissions. Only 15 percent is based on costs associated

8  with the risk of loss.

9      68.   TIRSA publishes its final calculated title rates in the New York Title

10  Insurance Rate Manual. These rates are tied to the value of the property being

11  insured. This is so despite the fact that the costs associated with agency

12  commissions are entirely unrelated to the value of the property. Indeed, agency

13  kickbacks and enticements have little to do with producing a particular title policy

14  and provide no value – proportional to property value or otherwise – to the

15  consumer. Even search and exam costs are unrelated to property value. They

16  instead depend on the age of the property, the complexity of the ownership history,

17  and the accessibility of prior ownership records.

18      69.   There are other states in which the defendants overly meet and agree

19  to fix the rates for title insurance as part of a formal collective rate setting process.

20  **B.    TIRSA's Formation**

21      70.   Prior ot TIRSA, the New York Board of Title Underwriters

22  ("NYBTU") served as the title insurance rate-setting body in New York. NYBTU,

23  along with the title insurance rate setting bureaus in many other states, was

24  disbanded in the mid-1980s in the wake of a Federal Trade Commission ("FTC")

25  challenge to the collective rate setting activity of many of these associations. The

26  FTC's challenge culminated in *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621 (1992),

27  where the Supreme Court held that to avoid per se illegal price-fixing liability, the

28

LIM, RUGER & KIM, LLP

1    rate setting activity of these rating bureaus must be actively supervised by the state.

2    71.    In Ticor, the Supreme Court ruled that the rate establishing entities

3    within the individual states must be overseen and regulated by the state to avoid

4    per se price-fixing in violation of the Sherman Act. The Court found that the

5    respective state insurance departments failed to perform an independent review of

6    the title insurance industry's self-proclaimed fixed rates to determine their

7    reasonableness. It was held that the state insurance department must "exercise

8    sufficient independent judgment and control so that the details of the rates or prices

9    have been established as a product of deliberate state intervention, not simply by

10   agreement among private parties." Ticor, 504 U.S. at 634-35.

11   72.    The Third Circuit, reviewing Ticor on remand, concurred with the

12   FTC's finding that the collective rate-setting of certain state rating bureaus was

13   improper because it was not actively supervised by the state. The court wrote,

14   "[t]he Supreme Court plainly instructed us that a state's rubber stamp is not

15   enough. Active supervision requires the state regulatory authorities' independent

16   review and approval." Ticor Title Ins. Co. v. FTC, 998 F.2d 1129, 1139 (3d Cir.

17   1992).

18   73.    Defendants implemented a counter maneuver designed to circumvent

19   the Supreme Court's ruling in Ticor. Through TIRSA, defendants have set up a

20   rate-setting scheme to get around the rigors of state oversight required by Ticor.

21   They have done so by calculating a single rate that comprises both risk and agency

22   commission costs and by outsourcing to title agents the agency commission costs.

23   In this way, defendants avoid providing the Insurance Department with any

24   detailed breakout or backup for the bulk of the costs that make up their collectively

25   fixed rates.

26   74.    TIRSA merely submits an aggregated figure that is supposed to

27   represent the total agency commission costs. Embedded within this figure is the

28

LIM, RUGER & KIM, LLP

LIM, RUGER & KIM, LLP

1   vast quantity of dollars that are funneled to and through the title agencies as

2   kickbacks, financial inducements and other costs unrelated to the issuance of title

3   insurance. Defendants' design in all of this has been to effectively "hide" the cost

4   basis for their artificially high and collectively fixed title insurance premiums from

5   the regulatory scrutiny that Ticor demands.

6   **C.**   **Lack of Regulatory Supervision and Authority in New York**

7        **and Other States Including California**

8       75.   There is no provision under the New York Insurance Law for TIRSA

9   to include in its collectively fixed rates kickbacks and other agency commission

10   payments unrelated to the issuance of title insurance. Indeed, the New York

11   Insurance Department has openly acknowledged that it lacks the authority to

12   review any agency commission payments. It has likewise recognized that

13   defendants' outsourcing of agency commission costs has prevented it from

14   performing a meaningful review of TIRSA's calculated rates. This was made clear

15   at a November 2006 public hearing the New York Insurance Department held – the

16   first in 15 years – where it questioned TIRSA and its members on TIRSA's failure

17   to provide the Insurance Department with any backup or detail for agency

18   commissions.

19       76.   At the hearing, the Insurance Department conceded that it could not

20   properly evaluate TIRSA's calculated rates, and that it could only do so if it

21   obtained the detailed cost information on agency commissions that TIRSA does

22   not provide.

23       77.   The Insurance Department's recognition that it is not properly

24   supervising TIRSA's rate-setting activity is consistent with the April 2007 findings

25   of the U.S. Government Accountability Office ("GAO") that the title insurance

26   industry is in need of greater state regulation. The GAO studied the industry

27   conditions of several states, including New York, and concluded that "state

28

1  regulators have not collected the type of data, primarily on title agents' costs and
2  operations, needed to analyze premium prices and underlying costs."

3       78.     Unchecked by regulatory review and insulated from competition,
4  defendants have thus been able to collectively fix title insurance rates at
5  supracompetitive levels and earn profits that vastly exceed those contemplated by
6  the Insurance Department or that would have resulted in a free and open
7  competitive market.

8       79.     At the time of TIRSA's formation, the Insurance Department
9  established 5 percent (of the total premium) as the level of profit to which title
10  insurers are entitled.  The Insurance Department is supposed to carefully analyze
11  TIRSA's rate calculations, and, in particular, its revenue and cost information, to
12  ensure that this 5 percent profit level is maintained and based on a reasonable
13  premium.  However, without the authority or ability to scrutinize agency
14  commission costs, the Insurance Department has been unable to perform this
15  function.  As a result, defendants (through TIRSA) have been able to set artificially
16  high title premiums and secure title profits far in excess of the 5 percent threshold.

17       80.     Through an independent investigation conducted over the past several
18  years, the New York State Attorney General found that for every dollar of
19  insurance premium defendants collected, of the roughly 15 cents that supposedly
20  accounts for the risk of loss, only 3 cents is paid out in claims.  And, of the roughly
21  85 cents that supposedly covers agency commissions, only between 8 and 11 cents
22  goes to costs actually incurred by title agents in producing the title policy.  These
23  numbers show that title insurers' collectively fixed rates have resulted in profits
24  that untethered to and vastly exceeded the costs of producing such policies.

25       81.     The New York Attorney General's investigation further revealed that
26  what was largely driving these numbers were the kickbacks and other financial
27  inducements defendants were funneling to and through title agents to secure more

28

LIM, RUGER & KIM, LLP

20

CLASS ACTION COMPLAINT

1  business. As reported in the New York Insurance Department's 2006 hearing, one

2  title agency's financial statements revealed that it spent more than $1 million of

3  these so-called "agency commissions" on items identified as "Christmas",

4  "automobile expenses", "political contributions", "promotional expenses", and

5  "travel and entertainment". These expenses are not even remotely related to the

6  issuance of title insurance.

7      82. The Washington State Insurance Commissioner's October 2006 report

8  found strikingly similar abuses in Washington. Violations were pervasive and the

9  Commissioner concluded that consumers were paying too much as a result.

10      83. All of this "excess money" paid to title agents not only works to steer

11  business to defendants. It also serves to boost defendants' own profits through the

12  inflated revenues they obtain to cover these agency payments and through their

13  ownership or management stake in many of these agencies.

14      84. Defendants are competitors in the sale of title insurance to consumers

15  throughout the United States. These title insurers have agreed and engaged in

16  concerted efforts to (i) collectively set and charge uniform and supracompetitive

17  rates for title insurance, (ii) include in their calculated rate agency commission

18  costs, (iii) embed within these costs payoffs, kickbacks, and other charges that are

19  unrelated to the issuance of title insurance, and (iv) hide these supposed "costs"

20  from regulatory scrutiny by funneling them to and through title agents over which

21  the government agencies have no ability or authority to regulate.

22      85. The United States Government Accountability Office ("GAO") in its

23  2007 report entitled "Actions Needed to Improve Oversight of the Title Insurance

24  Industry and Better Protect Consumers" found several indicia of a lack of

25  competition and questions about the reasonableness of prices including:

26

27

28

LIM, RUGER & KIM, LLP

- Consumers find it difficult to shop for title insurance, therefore, they put little pressure on insurers and agents to compete based on price;

- Title agents do not market to consumers, who pay for title insurance, but to those in the position to refer consumers to particular title agents, thus creating potential conflicts of interest;

- A number of recent investigations by HUD and state regulatory officials have identified instances of alleged illegal activities with the title industry that appear to reduce price competition and could indicate excessive prices;

- As property values or loan amounts increase, prices paid for title insurance by consumers appear to increase faster than insurers' and agents' costs; and

- In states where agents' search and examination services are not included in the premium paid by consumers, it is not clear that additional amounts paid to title agents are fully supported by underlying costs.

86. The GAO visited several states, including California, and found a lack of regulatory oversight:

> In the states we visited, we found that regulators did not assess title agents' costs to determine whether they were in line with premium rates; had made only limited efforts to oversee title agents (including ABAs involving insurers and agents); and, until recently, had taken few actions against alleged violations of antikickback laws. In part, this situation has resulted from a lack of resources and limited coordination among different

LIM, RUGER & KIM, LLP

1       regulators within states. On the federal level, authority

2       for alleged violations of section 8 of RESPA, including

3       those involving increasingly complex ABAs, is limited to

4       seeking injunctive relief. Some state regulators

5       expressed frustration with HUD's level of responsiveness

6       to their requests for help with enforcement, and some

7       industry officials said that RESPA rules regarding ABAs

8       and referral fees need to be clarified. Industry and

9       government stakeholders have proposed several

10      regulatory changes, including RESPA reform,

11      strengthened regulation of agents, a competitor right of

12      action with no monetary penalty, and alternative title

13      insurance models. [Id. at 41, footnotes omitted.]

**D. Competition Based on Kickbacks and Inducements but not Rates**

16     87. Having agreed to fix or stabilize prices in New York and other states

17 where they overtly meet to promulgate rates, these same defendants then set out to

18 do the same in other states.

19     88. In other words, as a direct result of these meetings where rates were

20 agreed to, these same defendants agreed, either expressly or tacitly, to not compete

21 on rates in other states as well. To compete on rates in other states could and

22 would imperil their ability to maintain the agreed rate in states like New York.

23     89. As is the case in New York, a lack of regulatory authority over rates

24 created an environment in which a conspiracy can and did succeed. No agency

25 was examining why all the rates were virtually identical, and no agency was

26 examining whether the costs associated with these premiums were reasonable.

27 This is an environment which is conducive to price-fixing.

28

LIM, RUGER & KIM, LLP

90.     In California, there is a lack of regulatory authority and oversight over title insurance companies.  The rates in California are not set as part of a deliberate state intervention and the state does not and cannot meaningfully renew or approve these rates. The rates at issue in this case went into effect without review.

## E.     Other Indicators of a Lack of Competition and Conditions Conducive to Collusive Rate Setting

91.     In addition to the uniformity of rates, other facts suggest that it is more plausible than not that rates have been set based on an agreement to fix prices.

92.     In theory, the chain of title should be documented back to its historic grant of ownership centuries past.  Fear about a possible title defect in the distant past is widely used as a justification by title agencies when convincing property buyers to purchase an owner policy in addition to the lender policy, which is mandatory to secure a mortgage.  The title agency, however, saves much time and money when the search is limited to one or two transactions.  They rely on the insurance policy to cover the remote chance of missing an earlier but still valid claim.  If such a claim is asserted and survives the scrutiny of the title insurance company's legal department, the expected cost of compensation is likely to be less than the sum of added overhead costs of routinely tracing back every chain of title to the earliest registered owner in the distant past.

93.     Title insurance Industry officials tend to justify the large proportion of the premium retained by the title abstract and settlement agency (from 60 to more than 90 percent) by the alleged high cost of title searching back into the distant past.  In fact, a high proportion of non-commercial properties are searched only through the most recent transaction.  No information is available as to what proportion of claims originate in the distant past.  The industry has never published pertinent statistics.  It would have a marketing incentive to publish these statistics if the risk were significant; that it has not published these statistics indicates that

LIM, RUGER & KIM, LLP

CLASS ACTION COMPLAINT

1   the risk probably is only slightly greater than zero.

2       94.    Many U.S. homes are being resold three or four times in twenty-five

3   years. At each of these occasions, an abstract of tile will be prepared on the basis

4   of a more or less thorough review of the available title records, inheritance records,

5   family records and records of past or current liens against a property. It is

6   reasonable, therefore, to suspect that the risk of a title defect will decrease every

7   time a property is sold.

8       95.    Title searches have become less labor intensive, especially in large

9   urban counties and cities. More and more of the information is available online.

10   The statistical likelihood that a title default would be overlooked is a closely held

11   industry secret, but it appears to be so small that many transactions are now insured

12   on the basis of a search of the last owner's title history or a search into transactions

13   that occurred during the last twenty-five to thirty-five years. The evidence is

14   strong that the title insurance industry has achieved a remarkably high level of loss

15   minimization.

16       96.    Thus, the costs of production have decreased as has the risk of loss yet

17   none of these factors has resulted in price competition at the consumer level.

18       97.    There is a remarkable absence of rate changes by title insurers over the

19   past five years, despite declining costs of production, increased number of

20   transactions and increased revenue per transaction. During a period when costs per

21   unit of production declined significantly, underwritten title companies and title

22   insurers maintained excessive rates. The prices charged by title insurers and

23   underwritten title companies were not and are not responsive to the changing costs

24   of production or increasing revenue per transaction at a given set of rates. Again,

25   this is indicia of an agreement not to compete based on price.

26       98.    As noted, the title companies engage in illegal rebates and kickbacks

27   where the title insurer or the underwritten title company provides money, free

28

LIM, RUGER & KIM, LLP

1   services or other things of value to a real estate agent, a lender or homebuilder in

2   exchange for business referrals. These illegal rebates and kickbacks — a

3   consequence of reverse competition — show that title insurance rates are

4   supracompetitive and that some portion of the overcharge is passed from the

5   underwritten title company or title insurer to the referrer of business.

6       99.    A lack of competition and the ability to control prices is enhanced by

7   the fact that there were few title insurer entrants over the period from 1995 through

8   2005 and the number of title insurer groups declined as title insurers acquired other

9   title insurers. There were few underwritten title company entrants over the 2000 to

10  2005 period and new entrants were controlled business arrangements whose

11  addition to the market did not result in greater price competition.

12      100.    Access to title plants can be a barrier to entry, but a large barrier to

13  entry exists due to the established relationships between the entities that can steer

14  the consumer's title and escrow business and the entities who sell title insurance

15  and escrow services.

16      101.    The title insurance market is highly concentrated — a few title

17  insurers account for insurance the vast majority of title insurance sales — at both

18  the statewide level and at the county level in California. For example, three title

19  insurer groups account for 77.4% of the market at a statewide level. At the county

20  level, each individual market was highly concentrated. The GAO found that First

21  American and Fidelity had a market share of 66 percent. Such a concentration

22  enhances the ability of companies to fix prices.

23      102.    The agreement not to compete based on price is also evidenced by the

24  fact that no company has marketed its services to consumers, the ultimate

25  purchasers of the product.

26  //

27  //

28  //

CLASS ACTION COMPLAINT

LIM, RUGER & KIM, LLP

# VIII. CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF THE SHERMAN ACT

103. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

104. Although the exact dates are unknown to plaintiff, it is herein alleged upon information and belief that beginning at least as early as March, 2004, and continuing thereafter to the present, defendants and their co-conspirators engaged in a contract, combination or conspiracy to unlawfully restrain trade and commerce in violation of Section 1 of the Sherman Act.

105. The aforesaid combination and conspiracy has consisted of a continuing agreement, understanding and concert of action among the defendants and their co-conspirators, the substantial terms of which have been:

      (a)    to fix, raise, maintain and stabilize the price of title insurance throughout the State of California;

      (b)    to fix, raise, maintain and stabilize the terms and conditions of sale of title insurance in the State of California; and

      (c)    to allocate and divide the market for title insurance throughout the State of California.

106. In the absence of proper regulatory authority and oversight, defendants' conduct constitutes a horizontal agreement to fix the form, structure, and prices of title insurance and to allocate and divide the title insurance market in California and is a per se violation of Section I of the Sherman Act.

107. Defendants' price-fixing, market allocation and division activity has been continuous throughout the relevant damages period and has been renewed and reinforced annually through submissions to the OIC of supposed cost and revenue information and its periodic submissions of rate changes.

LIM, RUGER & KIM, LLP

1      108.  Through their collective price-fixing, market allocation and division

2  and manipulation of the regulatory process, defendants have harmed competition

3  by charging consumers supracompetitive prices for title insurance in California,

4  evidenced in part by the fact that the prices are uniformly higher than compared

5  with the cost of providing the insurance.

6      109.  The aforesaid combination and conspiracy has had the following

7  effects among others:

8         (a)   price competition in the sale of title insurance has been

9         suppressed, restrained and eliminated;

10       (b)   prices for title insurance have been raised, fixed, maintained

11       and stabilized at artificially high and non-competitive levels; and

12       (c)   purchasers of title insurance have been deprived of the benefit

13       of free and open competition.

14      110.  Plaintiff and Class members, as a proximate result of defendants'

15  unlawful conduct in the California title insurance market, have suffered injury in

16  that they paid supracompetitive rates for title insurance.  Defendants' horizontal

17  price fixing scheme, unimpeded by meaningful regulatory oversight, constitutes a

18  per se violation of Section 1 of the Sherman Act.  As a result, plaintiff and each

19  member of the Class he represents, has been injured and damaged in an amount

20  presently undetermined.

21                  **COUNT II**

22        **VIOLATION OF CALIFORNIA BUSINESS**

23      **AND PROFESSIONS CODE §§ 16720, *ET SEQ.***

24      111.  Plaintiff incorporates by reference all the preceding allegations as if

25  fully set forth herein.

26      112.  Defendants' acts, as alleged herein, are in violation of Federal and

27  State antitrust laws and were carried out and effectuated within the State of

28

LIM, RUGER & KIM, LLP

CLASS ACTION COMPLAINT

1　California.

2　　113.　Defendants, beginning no later than March, 2004 and continuing to the

3　present, violated the Cartwright Act of California (Cal. Bus. & Prof. Code §§

4　16720, et seq.).

5　　114.　As a direct result of defendants' unlawful conduct, plaintiff and Class

6　members, have suffered injury in that they paid more for title insurance than they

7　would have paid in the absence of the alleged antitrust violations and have suffered

8　injury to their business and property.

9　　　　　　　　　　　　　**COUNT III**

10　**CALIFORNIA'S BUSINESS & PROFESSIONS CODE §§ 17200, *ET SEQ.***

11　　115.　Plaintiff incorporates by reference all of the preceding allegations as if

12　fully set forth herein.

13　　116.　Plaintiff and Class members allege that defendants' statements and

14　misrepresentations constitute unfair, unlawful and deceptive trade practices in

15　violation California's UCL, Bus. & Prof. Code §§ 17200, et seq.

16　　117.　Defendants' illegal conduct, alleged herein, is ongoing and part of a

17　larger pattern of conduct that permeates the title insurance industry. Plaintiff and

18　Class members sustained injuries in the form of lost money or property, paying an

19　inflated price for title insurance, as a direct result of defendants' conduct in

20　violation of § 17200 of the California Business and Professions Code.

21　　118.　Plaintiff requests that this Court enjoin the defendants from continuing

22　its unfair, unlawful, and deceptive practices. Plaintiff and Class members are

23　entitled to full restitution and/or disgorgement of all revenue, earnings, profits,

24　compensation, and benefits resulting from defendants' unlawful business acts, as

25　provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345, and for

26　such other relief as set forth in the Prayer for Relief.

27

28

LIM, RUGER & KIM, LLP

# COUNT IV

## UNJUST ENRICHMENT

119. Plaintiff incorporates by reference all of the preceding allegations as if fully set forth herein.

120. This Cause of Action is pled in the alternative to all claims and/or causes of action at law.

121. Defendants have received a benefit from plaintiff and the Class members in the form of the prices plaintiff and the Class members paid for defendants' title insurance.

122. Defendants are aware of their receipt of the above-described benefit.

123. Defendants received the above-described benefit to the detriment of plaintiff and each of the other members of the Class.

124. Defendants continue to retain the above-described benefit to the detriment of plaintiff and the Class members.

125. As a result of defendants' unjust enrichment, plaintiff and the Class members have sustained damages in an amount to be determined at trial, and seek full disgorgement and restitution of defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful or wrongful conduct alleged above.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands:

A. That the alleged combination and conspiracy among the defendants and their co-conspirators be adjudged and decreed an unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

B. That the Court declare that the premiums charged are excessive under state law and order damages;

C. That judgment be entered against defendants, jointly and severally, and in favor of plaintiff, and each member of the Class it represents, for threefold

LIM, RUGER & KIM, LLP

1   the damages determined to have been sustained by plaintiff, and each member of

2   the Class it represents, together with the cost of suit, including a reasonable

3   attorneys' fee;

4         D.     Each of the defendants, successors, assignees, subsidiaries and

5   transferees, and their respective officers, directors, agents and employees, and all

6   other persons acting or claiming to act on behalf thereof or in concert therewith, be

7   perpetually enjoined and restrained from, in any manner, directly or indirectly,

8   continuing, maintaining or renewing the aforesaid combination, conspiracy,

9   agreement, understanding or concert of action, adopting or following any practice,

10   plan, program, or design having a similar purpose or effect in restraining

11   competition; and

12         E.     Other and further relief as may appear necessary and appropriate.

13                     **JURY TRIAL DEMANDED**

14   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff

15   demands a trial by jury for all claims alleged herein.

16

17   Dated: March 20, 2008       **LIM, RUGER & KIM, LLP**

18

19                By:   _____

20                     Christopher Kim

                       Lisa J. Yang

21

22                 **SCHIFFRIN BARROWAY TOPAZ &**

                  **KESSLER, LLP**

23                 Alan R. Plutzik, Of Counsel

24                 Robert M. Bramson, Of Counsel

                2125 Oak Grove Road, Suite 120

25                 Walnut Creek, CA 94598

26                 Telephone: (925) 945-0770

                Fax: (925) 945-8792

27

28

LIM, RUGER & KIM, LLP

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
Joseph H. Meltzer
Edward W. Ciolko
Katherine B. Bornstein
Terence S. Ziegler
Casandra A. Murphy
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Attorneys for Plaintiff and the Proposed Class

LIM, RUGER & KIM, LLP

32

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV08- 1897 DSF (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Christopher Kim (Bar No. 082080)
Lisa J. Yang (Bar No. 208971)
LIM RUGER & KIM, LLP
1055 West Seventh Street, Suite 2800
Los Angeles, California 90017
Telephone: (213) 955-9500

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT LEON DAVIS, individually and on behalf of all others similarly situated, <br><br> PLAINTIFF(S) <br><br> v. <br><br> (COMPLETE DEFENDANTS' LIST ATTACHED) <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **CV08-01897 DSF AJWx** <br><br><br> **SUMMONS** |

TO:    DEFENDANT(S):  (Please see the list attached)

A lawsuit has been filed against you.

Within   20   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Christopher Kim or Lisa J. Yang , whose address is  Lim, Ruger & Kim, LLP, 1055 West Seventh Street, Suite 2800, Los Angeles, CA 90017 .  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:    **MAR 2 0 2008**

By: _Natalie Gongora_
Deputy Clerk

*(Seal of the Court)*

[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].

CV-01A (12/07)                                      **SUMMONS**

# ATTACHMENT TO SUMMONS

Defendants,

FIDELITY NATIONAL FINANCIAL, INC., FIDELITY NATIONAL
TITLE INSURANCE COMPANY, TICOR TITLE INSURANCE
COMPANY, TICOR TITLE INSURANCE COMPANY OF FLORIDA,
CHICAGO TITLE INSURANCE COMPANY, NATIONAL TITLE
INSURANCE OF NEW YORK, INC., SECURITY UNION TITLE
INSURANCE COMPANY, THE FIRST AMERICAN CORPORATION,
FIRST AMERICANTITLE INSURANCE COMPANY, UNITED
GENERALTITLE INSURANCE COMPANY, LANDAMERICA
FINANCIAL GROUP, INC., COMMONWEALTH LAND TITLE
INSURANCE COMPANY, LAWYERS TITLE INSURANCE
CORPORATION, TRANSNATION TITLE INSURANCE COMPANY,
STEWART TITLE GUARANTY COMPANY and STEWART TITLE
INSURANCE COMPANY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Vincent Leon Davis | Fidelity National Finance, Inc., et al. |

| (b) County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): | County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only): |
|---|---|

| (c) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Christopher Kim/Lisa J. Yang      Tel: (213) 955-9500<br>LIM RUGER & KIM, LLP<br>1055 West Seventh Street, Suite 2800<br>Los Angeles, CA 90017 | Attorneys (If Known) |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No      ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §§ 1331, 1337(a) and 1367

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☑ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No   ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number: _____   **CV08-01897**

CV-71 (07/05)                    CIVIL COVER SHEET                    Page 1 of 2

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

### AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? ☑ No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

---

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)
☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.

    VINCENT LEON DAVIS - Los Angeles

List the California County, or State if other than California, in which **EACH** named defendant resides.  (Use an additional sheet if necessary).
☐ Check here if the U.S. government, its agencies or employees is a named defendant.
    FIDELITY NATIONAL FINANCIAL, INC. - Florida
    FIDELITY NATIONAL TITLE INSURANCE COMPANY -  Florida
    TICOR TITLE INSURANCE COMPANY - Florida
    TICOR TITLE INSURANCE COMPANY OF FLORIDA -  Florida
    (See the attached for continuation of this list)

**List the California County,** or  State if other than California, in which **EACH** claim arose.  (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.

    Los Angeles

---

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____ Date _____3-20-2008_____

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

---

## ATTACHMENT TO CIVIL COVER SHEET (CV-71 (07/05))

- CHICAGO TITLE INSURANCE COMPANY - Chicago
- NATIONAL TITLE INSURANCE OF NEW YORK, INC. -  New York
- SECURITY UNION TITLE INSURANCE COMPANY - Florida
- THE FIRST AMERICAN CORPORATION  - Orange County, California
- FIRST AMERICAN TITLE INSURANCE COMPANY – Orange County, California
- UNITED GENERAL TITLE INSURANCE COMPANY – Los Angeles County, California
- LANDAMERICA FINANCIAL GROUP, INC. - Virginia
- COMMONWEALTH LAND TITLE INSURANCE COMPANY - Virginia
- LAWYERS TITLE INSURANCE CORPORATION – Connecticut
- TRANSNATION TITLE INSURANCE COMPANY - Virginia
- STEWART TITLE GUARANTY COMPANY - Texas
- STEWART TITLE INSURANCE COMPANY – New York